UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SHELBY GAIL HEIFETZ, | Case No. 19-cv-02392-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS** |
| MONA'S BURGERS CLAYTON LLC., | |
| Defendant. | Re: ECF No. 78 |

## INTRODUCTION

Plaintiff Shelby Heifetz, who is legally blind, sued defendant Mona's Burgers for violating the Americans with Disabilities Act of 1990 ("ADA"), California's Unruh Civil Rights Act, and other state statutes after she was unable to navigate the restaurant safely or get to the restroom reasonably.[1] Ultimately she accepted the defendant's Rule 68 offer of judgment of $8,001 and moved for attorney's fees of $44,150 and expert costs of $4,193.75.[2] Mona's Burgers challenges the plaintiff's counsel's proposed hourly rate of $400 as exceeding the $325 hourly rate allowed in 2020 decisions in this district, and it challenges her billed hours as excessive, generally on the

---

[1] Second Am. Compl. ("SAC") – ECF No. 32. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Notice of Acceptance – ECF No. 61; Mot. – ECF No. 19.

ORDER – No. 19-cv-02392-LB

1  ground that the plaintiff cannot recover for her efforts to correct deficient pleadings or barriers that
2  were remediated.[3] The court awards $6,557.28 in fees and $4,193.75 in costs.

## STATEMENT

The remaining issue in the lawsuit is the plaintiff's fees motion. This section summarizes the facts relevant to the motion.

### 1. The Lawsuit and the Settlement Discussions

The plaintiff filed her complaint on May 1, 2019 and amended it without authorization 38 days later.[4] The defendant moved to dismiss the amended complaint as unauthorized and the underlying complaint on several grounds: (1) the plaintiff never alleged that she visited the restaurant, which eliminated the ADA claim (the basis for federal jurisdiction); (2) the claim for daily damages was improper; and (3) the plaintiff did not plead plausible claims under California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL").[5] The plaintiff asked to file an amended complaint, and the court granted the motion.[6] After the plaintiff filed the second amended complaint ("SAC"), the defendant again moved to dismiss the UCL and FAL claims, and it moved to dismiss the ADA claim as moot because it remediated the barriers.[7]

At the January 9, 2020 hearing on the motion, the plaintiff agreed that that she did not plausibly plead the UCL and FAL claims. (At the hearing, the court characterized the UCL and FAL claims as "outlier claims" because they are not typical or suited for ADA lawsuits. The plaintiff's counsel previously told the defendant that she would dismiss the claims in return for an agreement to a stipulated amended complaint to add barriers identified at the site inspection.) At the hearing, the court also denied the motion to dismiss the ADA claims because, while most

---

[3] Opp'n – ECF No 83.
[4] Compl. – ECF No. 1; First Am. Compl. – ECF No. 13.
[5] Mot. – ECF No. 19 at 1–2.
[6] Order – ECF No. 31.
[7] Mots. – ECF Nos. 36, 41.

ORDER – No. 19-cv-02392-LB                    2

1  barriers were remediated and moot, there were two doors still at issue (generally about door
2  pressure), and the defendant was still remediating them. To try to manage the fees and costs, the
3  court referred the case for mediation, stayed all proceedings until after mediation was complete,
4  and said that it would not allow an amended complaint (to add new barriers identified at the site
5  inspection) until after a post-mediation case-management conference.[8]

6  The alleged barriers in all complaints were (1) the lack of truncated domes on the path from
7  the parking lot to the front door, (2) the front door was too heavy, (3) there was no signage in
8  braille with directions to the bathroom, and (4) the twist knob on the bathroom door posed an
9  obstacle based on the plaintiff's use of a cane.[9] Before she filed the lawsuit, the plaintiff's expert
10 did an informal investigation and found the following additional barriers: no exterior directional
11 signage; a towaway sign that lacked "proper information;" a heavy and fast-closing bathroom door
12 that did not have a braille sign on the latch; no exit signs with braille; and "on [if]nformation,
13 protruding items were present in the interior path of travel."[10] At the joint site inspection on
14 November 19, 2019, the plaintiff's expert identified the same barriers but with more information,
15 such as the dimensions of the protruding objects and the pressure needed to operate the doors.[11]

16 Mona's Burgers apparently opened on May 1, 2018, never cleared a profit, and is struggling in
17 the pandemic.[12] It has pro bono counsel.[13] When the lawsuit was filed, its counsel offered the
18 plaintiff an early settlement, informing the plaintiff's counsel that litigation would force Mona's
19 into bankruptcy. He proposed a settlement of $4,001, attorney's fees and costs (to be determined
20 through mediation or by the court), a site inspection by a certified access specialist ("CASp"), and
21 remediation (in either a consent decree or a settlement agreement) of all barriers for persons with
22 vision disabilities. The plaintiff's counsel rejected the offer, saying that he would not settle until

---

[8] Order – ECF No. 54 at 2.
[9] *See, e.g.*, SAC – ECF No. 32 at 4–5 (¶¶ 12, 15).
[10] *Id.* at 5 (¶ 15).
[11] Proposed Third Am. Compl., Ex. 9 to Thimesch Decl. – ECF No. 83-10 at 6–8 (¶ 16).
[12] Opp'n – ECF No. 83 at 8; Thimesch Decl. – ECF No. 83-1 at 5 (¶ 18).
[13] Thimesch Decl. – ECF No. 83-1 at 47 (¶¶ 112–113).

the landlord was part of the lawsuit and the site inspection was held, and he warned that he usually settled at $32,000 per defendant. The defendant then formalized the offer in a Rule 68 offer of judgment that included 13 paragraphs about injunctive relief. At that point, the plaintiff's fees and costs were $4,925.50.[14] The plaintiff did not accept the offer and instead, on December 14, 2019, demanded remediation and $34,415 ($12,000 in statutory damages and $22,415 in fees and costs).[15]

In the months that followed, the defendant's counsel tried to settle the case, asking for feedback on remediation, offering a consent decree, and reminding the plaintiff of Mona's precarious financial situation. The plaintiff's counsel did not respond or insisted on deferring settlement until the CASp generated his inspection report.[16] Before the defendant filed its motions to dismiss, it met and suggested voluntary amendment to keep costs down, but instead, the plaintiff insisted that the pleadings were adequate and that the parties had to resolve the pleadings before the inspection.[17] The plaintiff never served the landlords and ultimately dismissed them.[18] By the time of the November 2019 site inspection, Mona's Burgers had completed much of the remediation, including pouring a concrete pad, providing new handicap marking, and installing a raised sidewalk path from the parking to the front entrance and the main public sidewalk, which cost $45,000 and required financing.[19] The plaintiff's counsel refused thereafter to talk settlement — at the site inspection or after — until the pleadings were settled, her CASp report was final (a 45-day process), and she had "run the numbers." Throughout the process, Mona's Burgers remediated barriers and kept trying to resolve the case.[20]

---

[14] *Id.* at 5 (¶ 18), 9 (¶ 30); July 10, 2019 Rule 68 Offer, Ex. F to Karbelashvili Decl.– ECF No. 78–8.

[15] Karbelashvili Decl. – ECF No. 78-4 at 6 (¶ 4), 8 (¶25); Thimesch Decl. – ECF No. 83-1 at 26 (¶ 80).

[16] Thimesch Decl. – ECF No. 83-1 at (¶¶ 29–37) (attaching correspondence).

[17] *Id.* at 20–21 (¶¶ 45–47).

[18] Aug. 29, 2019 Notice – ECF No. 27; Notice of Voluntary Dismissal – ECF No. 29.

[19] Thimesch Decl. – ECF No. 83-1 at 23 (¶ 58).

[20] *Id.* at 23–26 (¶¶ 62–75).

At the court-ordered mediation in August 2020, the parties did not settle the case but ultimately, the defendant made another Rule 68 offer for $8,001 (with no injunctive relief because the remediation was complete), the plaintiff accepted it, and the court entered judgment in the plaintiff's favor.[21] The parties conferred about fees and the expert costs, the defendant offered $6,597 (and did not agree to expert costs), and the plaintiff agreed to reduce fees by 25 percent.[22] The parties did not resolve the dispute, and the plaintiff moved for her fees and expert costs.[23]

The court held a hearing on January 21, 2021. All parties consented to magistrate-judge jurisdiction.[24]

### 2. Facts About the Hourly Rates and Hours Billed

The following chart summarizes the rates and hours billed by two attorneys and one expert.[25]

| Person | Role | Hourly Rate | Hours | Total |
| --- | --- | --- | --- | --- |
| Irene Karbelashvili | Attorney | $400 | 75.50 | $30,200.00 |
| Irakli Karbelashvili | Attorney | $250 | 55.80 | $13,950.00 |
| Bassam Altwal | Expert | $275 | 15.25 | $4,193.75 |
|  |  |  | **Total:** | **$48,343.75** |

Ms. Karbelashvili has practiced law for nearly 16 years, has handled ADA cases almost exclusively since 2010, cites the 130 ADA cases she handled from 2017 to 2020, has an hourly billing rate of $450 (although she does not specify whether clients have paid that rate), asks for $400 here, cites a 2016 case where she was awarded $325 per hour, cites other ADA cases in the district awarding rates to other ADA lawyers that support a $400 hourly rate, cites the Laffey matrix, and relies on expert Richard Pearl's declaration in support of class counsel's 2017 fees

---

[21] Certificate of ADR Session – ECF No. 60; Notice of Acceptance – ECF No. 61; Judgment – ECF No. 64.

[22] Karbelashvili Decl. – ECF No. 78-4 at 9 (¶ 33).

[23] Mot. – ECF No. 78.

[24] Consents – ECF No. 9, 16.

[25] Mot. – ECF No. 78 at 24, 30–31 (referencing exhibits).

ORDER – No. 19-cv-02392-LB           5

motion following a minimum-wage class-action trial that resulted in a $60.8 million common fund.[26] The defendant cites 2020 cases where the plaintiff's counsel was awarded $325 per hour.[27]

The defendant did not challenge Mr. Karbelashvili's hourly rate of $250.

It does challenge the hours billed, sorting the billed tasks by category and suggesting reductions to those amounts, generally because certain efforts (such as correcting deficient pleadings and pursuing remediated injunctive relief) do not merit payment. The defendant also suggests a five-percent reduction for the hours associated with settlement. The defendant provides an entry-by-entry analysis of the billing records. The following chart summarizes the categories, the claimed amount, and the suggested award.[28]

| Category | Claimed Amount | Suggested Awards |
| --- | --- | --- |
| Pleadings/Due Diligence | $ 3,507.50 | $ 1,692.50 |
| Pursuing Mooted Injunctive Relief Claims | $20,802.50 | $    0.00 |
| Correcting Defective Pleadings | $ 6,985.00 | $    0.00 |
| Failed Service on the Dismissed Landlord Defendants | $   896.90 | $    0.00 |
| Settlement and Mediation | $ 3,579.50 | $ 3,400.53[29] |
| Fees on Fees | $ 7,780.00 | $    0.00 |
| **Total:** | **$43,551.40** | **$ 5,093.03** |

---

[26] Karbelashvili Decl. – ECF No. 78-4 at 2–3 (¶¶ 4–11) (citing *Rogers v. Fitzgerald*, No. 14-cv-00985-DMR, 2016 WL 4658974 (N.D. Cal. Sept. 7, 2016)) & Pearl Decl., Ex. C to *id.* – ECF No. 78-5; *see* Fees Order, No. 08-cv-05821-SI – ECF No. 606 (Sept. 14, 2017).

[27] Opp'n – ECF No. 83 at 29 (citing *Ketroser v. UB SR LLC*, No. 19-cv-0554-YGR (RMI), 2020 WL 4906068, at *10 (N.D. Cal. July 9, 2020), *report and recommendation adopted,* 2020 WL 4904863 (N.D. Cal. Aug. 20, 2020) & *Volle v. Sherwin Petroleum,* No. 19-CV-0545-NC, 2019 WL 7859559, at *2 (N.D. Cal. Nov. 22, 2019), *report and recommendation adopted,* 2020 WL 257056 (N.D. Cal. Jan. 16, 2020)*, modified on other grounds* 2020 WL 1429768 (N.D. Cal. Mar. 24, 2020)).

[28] Opp'n – ECF No. 83 at 19 (summarizing billing records); Thimesch Decl. – ECF No. 83-1 at 29–47 (¶¶ 96–114) & Exs. 1–5.

[29] This is the correct five-percent reduction (as opposed to Mona's calculation of $3,404.50).

## ANALYSIS

The federal and state statutes authorize fees for the claims in the complaint. In an ADA case, a district court has the discretion to award the prevailing party reasonable attorney's fees. 42 U.S.C. § 12205. "The Supreme Court has explained that, in civil rights cases, the district court's discretion is limited. A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) (cleaned up). The Unruh Act allows for attorney's fees as "may be determined by the court." Cal. Civ. Code § 52.

"A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. The district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel. The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (cleaned up) .

California state and federal courts use the lodestar method to determine a reasonable fee award.[30] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The next two sections address the hourly rate and the hours billed.

**1. Hourly Rates**

The defendant contends that Ms. Karbelashvili's hourly rate should be $325 (not $400).[31] In 2020, other courts in this district have allowed a $325 hourly rate. The court does the same.

---

[30] "California law is materially similar to federal law in determining the reasonableness of attorneys' fees." *Malem Med., Ltd. v. Theos Med. Sys., Inc.*, No. 13–cv–05236–EMC, 2017 WL 5153300, at n.1 (N.D. Cal. Nov. 7, 2017). This order thus cites federal law.

[31] Opp'n – ECF No. 83 at 29.

ORDER – No. 19-cv-02392-LB                   7

The district court must determine a reasonable hourly rate based on the "experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). This task is "inherently difficult." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). To assist with the determination, the court looks to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers*, 796 F.2d at 1210-11. This community is typically that in which the district court sits. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). The burden is on the fee applicant to show his or her fee is in line with prevailing market rates. *Blum*, 465 U.S. at 895 n.11. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Widrig v. Apfel*, 140 F.3d 1207, 1209-10 (9th Cir. 1998) (declarations by attorneys regarding the prevailing market rate in the community may be enough to establish a reasonable rate in the market). In some cases, the court may look outside of the forum community for rates if local counsel is unavailable "either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (following other circuit courts).

Two courts in this district recently awarded an hourly rate to Ms. Karbelashvili of $325. *Ketroser v. UB SR LLC,* No. 19-cv-05554-YGR (RMI), 2020 WL 4906068, at *10 (N.D. Cal. July 9, 2020), *report and recommendation adopted*, 2020 WL 4904863 (N.D. Cal. Aug. 20, 2020); *Volle v. Sherwin Petroleum*, No. 19-CV-0545-NC, 2019 WL 7859559, at *2 (N.D. Cal. Nov. 22, 2019), *report and recommendation adopted,* 2020 WL 257056 (N.D. Cal. Jan. 16, 2020), *modified on other grounds*, 2020 WL 1429768 (N.D. Cal. Mar. 24, 2020). The court follows those cases as persuasive. Also, *Rodgers v. Fitzgerald* supports this result. No. 14-cv-00985-DMR, 2016 WL4658974, at * 4–6 (N.D. Cal. Sept. 17, 2016) (addressing the hourly rate, the particular qualifications of counsel here, and rejecting the argument that this counsel's rate should fall within the range awarded to other counsel). For this case, the appropriate hourly rate is $325.

**2. Hours Billed**

The fee-seeking party bears the initial burden to prove the reasonableness of hours expended using detailed time records documenting completed tasks and time expended. *Hensley*, 461 U.S. at 437*; Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 945-46 (9th Cir. 2007). The district court may reduce an award if the documentation is inadequate or if it finds that some of the hours were not reasonably expended, such as those that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 433-34. The opposing party then bears the burden of challenging the accuracy and reasonableness of the hours charged. *Deukmejian*, 987 F.2d at 1397–98. This must be done by specifically identifying defects or deficiencies in the requested hours; conclusory or unsubstantiated objections are insufficient to warrant a reduction. *Cancio v. Fin. Credit Network, Inc*., No. C 04-03755 TEH, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005). The court also must conduct an independent review of the fees for reasonableness. *McGrath v. Cty. of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995). A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (plurality opinion) (cleaned up).

The defendant contends, and the court holds, that the plaintiff spent hours here that were unnecessary. The court reduces the hours billed as follows.

First, the court disallows all hours spent on the pleadings after the initial complaint. All hours were spent correcting errors. Moreover, the defendant's motions were all correct: Mona's Burgers was remediating, and the UCL and FAL claims are not typical and were not pleaded plausibly.[32]

Second, the defendant contends that hours should be reduced (from 7.3 hours to 3.1 hours) for the initial complaint because it was copied from another complaint in *Heifetz v. 1050 Contra Costa Blvd., LLC.*[33] The complaint is boilerplate. Decisions in this district have gone both ways: earlier decisions have allowed as few as .5 hours, and more recent decisions have allowed similar hours. *See, e.g.*, *Doran v. Corte Madera Inn Best W.*, 360 F. Supp. 2d 1057, 1062 (N.D. Cal. 2005)

---

[32] Orders – ECF Nos. 31, 54.

[33] Opp'n – ECF No. 83 at 20–21 & Compl., No. 18-cv-04837-SK, Ex. 10 to *id.*

ORDER – No. 19-cv-02392-LB   9

1  (reducing hours from 4.3 hours to 0.5 hours for a case involving a plaintiff with 73 earlier

2  lawsuits); *Ridola v. Chao*, No. 16-CV-02246-BLF, 2018 WL 2287668, at *17 (N.D. Cal. May 18,

3  2018) (finding all requested hours expended reasonable); *Ketroser*, 2020 WL 4906068, at *10.

4  Given the duplication of the earlier complaint, and the court's disallowance of all hours spent on

5  pleadings after the initial complaint, what is reasonable is a 10-percent reduction to reflect the

6  exercise of ordinary billing judgment. *Overbo v. Loews Cal. Theatres, Inc.*, No. C-07-05368 MHP

7  (LB), Report and Recommendation – ECF No. 92 at 22–24 (collecting cases and summarizing this

8  approach). As in *Overbo*, there is no evidence in the declarations or time records that counsel

9  exercised any billing judgment by, for example, reducing hours. *Id.*

10  Third, the defendant does not object to the hours spent in mediation but asks for a five-percent

11  reduction. Because the records do not show the exercise of billing judgment, the court applies the

12  defendant's five-percent suggested reduction.

13  Fourth, the court reduces the fees for the injunctive relief. The plaintiffs seek $20,802.50 (an

14  amount that includes the expert fee of $4,193.75). This case illustrates why the court has General

15  Order 56. That process allows the parties to have an early site inspection and avoid situations like

16  the situation here. The plaintiff drove up fees and costs completely unnecessarily, despite the

17  defendant's herculean efforts to facilitate resolution of all disputes, including the motions practice,

18  the remediation, and the lawsuit.[34] From the case's inception, the defendant offered full

19  remediation and a site inspection by a CASp. Put another way, the defendant did everything right,

20  and the plaintiff did everything wrong. The court stops short of disallowing the expert costs: the

21  ADA claims were not entirely mooted (although Mona's Burgers certainly was trying, at

22  substantial cost), and General Order 56 allows a site inspection. Notwithstanding the plaintiff's

23  counsel's behavior, the court determines that the plaintiff is a prevailing party and allows the

24  expert fee. *Cf. Rodgers*. 2016 WL4658974, at * 4–6 (N.D. Cal. Sept. 17, 2016). Given counsel's

25  behavior at the site inspection, the court does not allow fees. (At best, it would have allowed two

---

[34] Opp'n – ECF No. 83 at 8–19; Thimesch Decl. – ECF No. 83-1 at 1–29 (¶¶ 1–95) (summarized in part in the Statement and providing an exhaustive account of the efforts to resolve the case).

hours, which includes travel time and the time there, but given the abrupt termination of the post-inspection conversation, the court does not award the two hours). The court appreciates the defendant's prevailing-party argument, but on this record — given the timeline to remediation and interplay with court proceedings and the different Rule 68 offers — does not reach the conclusion that the plaintiff was not a prevailing party and thus not entitled to expert costs.

Fifth, the court does not compensate the costs to serve the landlords. Mona's Burgers offered resolution at every stage of the case, as General Order 56 requires. The plaintiff's counsel refused to engage, warning that he wanted to settle at $32,000 per defendant, but then dropped attempts once the court raised the issue.

Sixth, the court does not award fees on fees.

In sum, the court awards $10,751.03 in fees and expert expenses: (1) $3,156.75 (90 percent of $3,507.50) for work on the pleadings; (2) $3,400.53 (95 percent of $3,579.50) for mediation; and (3) $4,193.75 in expert costs.

The Ninth Circuit recently endorsed a similar approach to a court's considering the overall reasonableness of fees. *Ghadiri v. Carpet & Linoleum City*, No. 19-56345, Mem. Dispo., (9th Cir. Nov. 3, 2020) (affirming a district court's reduction of fees based on the court's overall assessment of the lawsuit). The court's assessment here is that the plaintiff acted unreasonably, and, for the reasons advanced in this order and in the defendant's opposition, is not entitled to the fees that she seeks.

## CONCLUSION

The court grants in part the motion for fees and expert costs and awards a total of $10,751.03.

**IT IS SO ORDERED.**

Dated: January 28, 2021

_____

LAUREL BEELER
United States Magistrate Judge